IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADELE ALTIMARI,<br><br>                Plaintiff,<br><br>   v.<br><br>BUCKS COUNTY RAILROAD<br>PRESERVATION AND RESTORATION<br>CORP. d/b/a NEW HOPE & IVYLAND<br>RAILROAD et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 21-2451 |

## OPINION

**Slomsky, J.**                                                                                      **May 31, 2022**

## I.    INTRODUCTION

This matter arises from the removal of trees.  The trees at issue in this case created a border between the adjacent properties of a commercial office space owned by Plaintiff Adele Altimari and a railroad facility owned and operated by Defendants Bucks County Railroad Preservation and Restoration Corporation, doing business as New Hope & Ivyland Railroad, New Hope & Ivyland Railroad, and Does 1 through 10.  Because Plaintiff alleges that Defendants wrongfully removed the trees, some of which were located entirely on her property, she brings several claims against Defendants, under both the federal Interstate Commerce Commission Termination Act ("ICCTA") and Pennsylvania common law.

Before the Court is a Motion to Dismiss for Failure to State a Claim and for a More Definite Statement pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), respectively.  For the reasons discussed below, the Court will grant Defendants' Motion in part and deny it in part.

## II.     BACKGROUND

Plaintiff Adele Altimari is the owner of roughly 2.7 acres of land in Warminster, Pennsylvania (the "Property"). (Doc. No. 1 ¶ 12.) Plaintiff purchased the property on August 17, 1995. On the Property is commercial office space known as the "Warminster Corporate Center," in which "offices are leased to tenants of various trades that provide real estate, legal, medical, and social services." (Id. ¶ 12.) The adjacent property is a railroad facility that is owned and operated by Defendants, known as the "Warminster Transload Rail Facility" (the "Rail Facility"). (Id. ¶ 14.) When Plaintiff purchased the Property, it was separated from the Rail Facility by a line of fully-grown trees, as well as a chain link fence. (Id. ¶ 15.) The line of trees and the fence ran for approximately 430 feet, tracking the border of the parcels at issue. (Id. ¶ 16.)

According to Plaintiff, "[t]he fence and the line of trees closest to the fence were situated entirely on Plaintiff's property." (Id. ¶ 17.) "The trees—maintained by Plaintiff twice a year—shielded the Property from the sight, the noise, and the pollution of the Rail Facility." (Id. ¶ 18.) The "sole purpose" of the trees was to provide a visual and auditory buffer between Plaintiff's Property and the Rail Facility. (Id. ¶ 19.) As alleged in the Complaint, the line of trees at issue effectively screened for visitors to and tenants of the Property the sight of abandoned equipment, rubble, trash, and debris left at the Rail Facility. (Id. ¶ 20.) At the end of 2019, Plaintiff discovered that, without notice, Defendants cut down and removed "all forestation" between the Property and the Rail Facility, including the line of trees. (Id. ¶ 21.) Plaintiff alleges that many of the trees at issue, particularly the line of trees closest to the chain link fence, were located on her Property. (Id. ¶ 23.)

As a result of the loss of trees, Plaintiff alleges that "the visitors and tenants of the Warminster Corporate Center are now subjected to unfettered loud noises, fumes, pollution, and debris" from the Rail Facility. (Id. ¶ 26.) Further, Plaintiff has suffered the loss of a sound barrier,

a treelined view, privacy, and rental income from tenants of the Warminster Corporate Center.  (Id. ¶¶ 29–30.)

On May 5, 2021, Plaintiff initiated this case by filing a Complaint against Defendants. (Doc. No. 1.)  In the Complaint, Plaintiff alleges various claims against Defendants: (1) a violation of the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 et seq. (Count I);  (2) trespass (Count II);  (3) private nuisance (Count III);  (4) a declaratory judgment (Count IV);  (5) negligence (Count V);  and (6) conversion (Count VI).  (See id. ¶¶ 35–83.)  In her prayer for relief, Plaintiff seeks the following: a declaratory judgment that Defendants have violated the ICCTA, trespassed on Plaintiff's land, and/or converted Plaintiff's property; an Order enjoining Defendants from further ICCTA violations or trespass on Plaintiff's property; actual damages; punitive damages; attorney's fees and costs; and such relief as the Court deems just and appropriate.  (Id. at 14.)

On August 30, 2021, Defendants filed a Motion to Dismiss the Complaint and/or for a More Definite Statement under Federal Rules of Civil Procedure 12(b)(6) and 12(e).  (Doc. No. 3.)  In the Motion, Defendants seek to dismiss Counts II through V and to obtain a more definite statement of the claims set forth in the Complaint.  (See id.)  Defendants do not seek dismissal of Count I, alleging a violation of the ICCTA, or Count VI, alleging conversion.[1]

The argument for dismissal of Counts II through V is two-fold.  First, Defendants assert that the common law causes of action in these counts, namely, trespass, private nuisance, declaratory judgment, and negligence, must be dismissed because the Interstate Commerce

---

[1]   At the hearing held on November 16, 2021, Defendants confirmed that they do not seek dismissal of Count VI alleging conversion because they do not contend that conversion is preempted by the ICCTA.  The relationship between Count VI and the ICCTA is discussed infra in Footnote 4.

Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 et seq., preempts these claims.  (Doc. No. 3-2 at 13.)  Second, Defendants argue that the claim for punitive damages should be dismissed because the allegations regarding removal of the trees do not amount to the "willful, wanton, or reckless" behavior necessary to warrant punitive damages.  (Id. at 14.)  Finally, Defendants seek a more definite statement pursuant to Rule 12(e) of "whether, and how, Plaintiff's claims do not arise from the general operation and construction of the Rail Facility" such that Plaintiff's claims would not be preempted under the ICCTA.  (Id. at 13.)

On October 8, 2021, Plaintiff filed a Response in Opposition to the Motion.  (Doc. No. 5.) On October 14, 2021, Defendants filed a Reply.  (Doc. No. 6.)  On November 16, 2021, the Court held a hearing on the Motion with counsel for the parties.  Defendants' Motion has been fully briefed and is ripe for disposition.

## III.   STANDARDS OF REVIEW

### A.   Motion to Dismiss Standard under FRCP 12(b)(6)—Failure to State a Claim

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010) set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## B.  Preemption at the Motion to Dismiss Stage

Under the Supremacy Clause, "the Laws of the United States . . . shall be the supreme Law of the Land," U.S. CONST. ART. VI, and "any state law, however clearly within a State's

acknowledged power, which interferes with or is contrary to federal law, must yield." Kurns v. A.W. Chesterton, Inc., 620 F.3d 392, 395 (3d Cir. 2010) (quoting Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962)) (internal quotation marks omitted).  "Preemption is an affirmative defense that the defendant has the burden to prove." Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 130 (3d Cir. 2018) (citing In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016)).  "To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense . . . a defendant must show that 'the defense is "apparent on the face of the complaint" and documents relied on in the complaint.'" Id. (quoting Bohus v. Restaurant.com, Inc., 784 F.3d 918, 923 n.2 (3d Cir. 2015) (quoting Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014))).  Dismissal of a claim due to preemption is only appropriate when "preemption is manifest in the complaint itself." Id. (quoting In re Asbestos, 822 F.3d at 133 n.6) (internal quotation marks omitted).

### C.    Motion Standard under FRCP 12(e)—More Definite Statement

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).  Motions for a more definite statement are "highly disfavored," as Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); see also Hughes v. Smith, Civ. No. 03-5035, 2005 WL 435226, at *4 (E.D. Pa. Feb. 24, 2005).  Thus, a court should grant a motion pursuant to Rule 12(e) only "if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading." S.E.C. v. Saltzman, 127 F. Supp. 2d 660, 668 (E.D. Pa. 2000).

**IV.    ANALYSIS**

**A. Federal Preemption under the ICCTA**

Defendants' argument for dismissal of Counts II through V is based on the affirmative defense of preemption.  In its Motion, Defendants argue that Counts II through V are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq.

The doctrine of preemption is derived from the Supremacy Clause of Article VI of the Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. CONST. art. VI, cl. 2.  State law "which interferes with or is contrary to federal law, must yield."  Free v. Bland, 369 U.S. 663, 667 (1962).  As noted supra, "[p]reemption is an affirmative defense that the defendant has the burden to prove."  Lupian, 905 F.3d 127, 130 (3d Cir. 2018); see also In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016).  Dismissal is appropriate under Rule 12(b)(6) "only when preemption is manifest in the complaint itself."  Lupian, 905 F.3d at 127.  Courts must begin their analysis by "applying a presumption against preemption."  Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992).  "In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest."  Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005).  Also, as noted supra, dismissal of a complaint based on the affirmative defense of preemption is not warranted unless it is apparent on the face of the complaint, which Defendants bear the burden of showing.  Lupian, 905 F.3d at 130.

The statute at the heart of the preemption issue in this case is the ICCTA.[2]  In 1995, Congress enacted the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq., to "operate transportation facilities and equipment without detriment to the public

---

[2]    In Count I, Plaintiff alleges a direct violation of the ICCTA by Defendants.  (See Doc. No. 1 at 8.)  This claim, therefore, is not subject to dismissal on the basis of preemption.

health and safety" and to "minimize the need for Federal regulatory control over the rail transportation system."  Id. § 10101.  The text of the ICCTA creates an agency called the Surface Transportation Board ("STB").  The STB has exclusive jurisdiction over the following areas:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]

49 U.S.C. § 10501(b).  The preemption clause of this section states that, "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."  Id.

The Third Circuit has explained that the ICCTA's preemption provision preempts all "state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation."  New York Susquehanna and Western Railway Corp. v. Jackson, 500 F.3d 238, 252 (3d Cir. 2007).  To determine whether a state law is preempted by the ICCTA, the Third Circuit has issued a two-part test.  See id.  State law is not preempted if: (1) the law does not discriminate against rail carriage; and (2) the law does not unreasonably burden rail carriage.  Id.  To meet the first prong, the state law "must address state concerns generally, without targeting the railroad industry."  Id.  "As for the unreasonably burdensome prong, the most obvious component is that the [state law] must not be so draconian that it prevents the railroad from carrying out its business in a sensible fashion."  Id.  This test has been applied to state tort claims.  See Diehl v. CSX Transportation, Inc., 349 F. Supp. 3d 487, 499 (W.D. Pa. 2018).

"Particularly expansive claims of ICCTA preemption have been criticized and rejected by courts on this basis." Benton v. CSX Transportation, Civ. No. 19-109, 2021 WL 3099502, at *3 (E.D. Pa. July 21, 2021).  "Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." J.P. Rail, Inc. v. New Jersey Pinelands Comm'n, 404 F. Supp. 2d 636, 650 (D.N.J. 2005) (citing Florida East Coast Ry. v. City of West Palm Beach, 266 F.3d 1324, 1331 (11th Cir. 2001)).  "In other words, exclusive STB jurisdiction 'is limited to remedies with respect to rail regulation—not State and Federal law generally.'" Id. (citing H.R. Rep. 104–422, reprinted in 1995 U.S.C.C.A.N. 850, 852.).  Thus, "the ICCTA does not present complete preemption of all state law," and a court must make a determination in each case "as to the degree to which the railroad is burdened." Shupp v. Reading Blue Mountain, 850 F. Supp. 2d 490, 499, 501 (M.D. Pa. 2012) (citations omitted).

A district court recently discussed whether tort claims of negligence and nuisance were preempted under the ICCTA in Diehl v. CSX Transportation, Inc., 349 F. Supp. 3d 487, 500 (W.D. Pa. 2018).  In Diehl, a train operated by the defendant derailed near the plaintiff's home, which caused her to evacuate her home for some time.  And, when she returned home, she was further inconvenienced by the derailment site repairs, which lasted for three months thereafter.  Id. at 496–97.  In a Motion to Dismiss, the defendant in Deihl argued that the ICCTA preempted the plaintiff's negligence and nuisance claims, to the extent that they were based on factual allegations that: (1) the defendant organized its rail cars in a way that did not safely distribute the weight of the rail cars; and (2) that the "[d]efendant created excessive noise and noxious fumes and operated bright

lights while working at the derailment site." Id. at 499.  Applying the first prong of the Third

Circuit test, whether the state law discriminates against railroads, the court concluded:

> Applying the test adopted by the Third Circuit, Plaintiff's negligence and nuisance claims are based on generally-applicable tort law that does not specifically target rail carriers for regulation. Therefore, the first prong of the ICCTA preemption test is satisfied and preemption is not triggered.

Id. (citation omitted).  However, when applying the second prong, whether the railroad would be

burdened by the state law claims, the court reasoned:

> However, the second prong of the Third Circuit's test poses more difficulty to Plaintiff at this stage of the litigation.  Plaintiff's allegations that Defendant's train was not organized in a safe manner and that Defendant created excessive noise and noxious fumes at the derailment site clearly involve the operation and construction of rail carrier tracks and facilities, such that they fall within the exclusive jurisdiction of the STB.  If Defendant were unable to undergo specific construction projects related to its rail operations because a court held such operations to be negligent or a nuisance, or if its ability to undergo such projects was delayed or regulated based on a state tort action, its ability to operate as a rail carrier would be impeded.  See Cities of Auburn and Kent, S.T.B. Finance Docket No. 33200, 1997 WL 362017, at *5 (S.T.B. July 1, 1997) (explaining that state permitting requirements for railroad construction projects could burden interstate commerce).

Id. at 499–500.  In concluding, the court noted that claims in other cases based on similar factual

allegations have been preempted:

> This Court's analysis of this issue is informed by decisions of other courts that have found claims related to the noise and fumes produced by railroad facilities to be preempted.  See Suchon v. Wis. Cent. Ltd., Civ. No. 04-0379, 2005 WL 568057, at *4 (W.D. Wis. Feb. 23, 2005) (finding that the ICCTA preempted Wisconsin nuisance law because the plaintiff was ultimately trying to use a state law to affect the conduct of a railroad); Norfolk S. Ry. Co. v. City of Maple Heights, Civ. No. 02-1468, 2003 WL 26100887, at *4 (N.D. Ohio May 14, 2003) ("[C]ourts have specifically found attempts to utilize state law to control noise produced by railroad operations to be preempted by the ICCTA."); Rushing v. Kan. City S. Ry. Co., 194 F. Supp. 2d 493 (S.D. Miss. 2001) ("[A]lthough the relevant Mississippi laws of negligence and nuisance may be construed as a [sic] exercise of the police power of the state to safeguard the health and safety of its citizens, the Plaintiffs are attempting to use these laws to impose regulations on the Defendant regarding the manner in which it operates its switch yard thereby potentially interfering with interstate rail operations."); Village of Ridgefield Park v. N.Y., Susquehanna & W. Ry. Corp., 163 N.J. 446, 462, 750 A.2d 57 (2000) (finding a nuisance claim related

to the noise and air pollution produced by a rail facility to be preempted by the ICCTA).

Id. at 500.

The court in Diehl held that the plaintiffs' negligence and nuisance claims were preempted "to the extent they are based on allegations regarding the order of the [d]efendant's rail cars and the noise and fumes created by the [d]efendant's cleanup of the derailment site." Id. Ultimately, however, the court did not wholly dismiss the state law negligence and nuisance claims, as the court found later in its opinion that plaintiff's negligence claim was not barred by the economic loss doctrine,[3] and that the private nuisance claim was supported by other factual allegations, such as that the plaintiff had to leave her home because of the derailment and the occurrence "negligently interfered with her use and enjoyment of her property." Id. at 508.

Here, Defendants argue that the ICCTA preempts the Pennsylvania common law claims brought in Counts II through V, namely, trespass, private nuisance, a declaratory judgment insofar as it involves state causes of action, and negligence, because these claims "clearly involve the operation and construction of rail carrier tracks and facilities, such that they fall within the exclusive jurisdiction of the STB." (Doc. No. 3-2 at 12 (citing Diehl, 349 F. Supp. 3d at 500).) More specifically, Defendants argue that the facts alleging "unfettered loud noises, fumes, pollution, and debris" from the Rail Facility, (see Doc. No. 1 ¶ 26), cannot be relied upon to prove the claims alleged in Counts II through V because they would be preempted under the ICCTA. (Doc. No. 3-2 at 12.) "At best," Defendants argue, "Plaintiff's damages . . . would be limited to the value of the alleged wrongfully removed trees." (Id.)

---

[3]  In Pennsylvania, the economic loss doctrine states that "no cause of action exists for negligence that causes only economic loss." Diehl, 349 F. Supp. at 505 (citing Aikens v. Balt. & Ohio R.R., 501 A.2d 277, 279 (Pa. Super. 1985)).  In the instant Motion to Dismiss, the economic loss doctrine is not at issue.

To counter this argument, Plaintiff stresses that her Complaint "does not involve generic claims related to the noise and fumes produced by the railroad," but rather, that her claims "are premised on Defendants' entry onto Plaintiff's land and wrongful removal of trees on that land." (Doc. No. 5 at 7.)  Thus, Plaintiff argues that determining preemption at this stage would be inappropriate, as "it requires a detailed record that does not exist at the present time," and Defendants have not specifically asserted that Plaintiff's claims "impinge on the railroad's ability to operate or that the nature of Plaintiff's claims prevent Defendants from carrying on their activities."  (Id.)

The Court will follow the approach taken in <u>Diehl</u> and will hold that the claims in Counts II through V are preempted only to the extent that they are based on allegations of "unfettered loud noises, fumes, pollution, and debris" from the Rail Facility, and the alleged loss in Property value due to these factors.  (Doc. No. 1 ¶ 26); <u>see also Diehl</u>, 349 F. Supp. at 500.  Although the state tort claims in Counts II through V do not discriminate against railroads and thus do not trigger the first prong of the Third Circuit's test for preemption, <u>see Diehl</u>, 349 F. Supp. at 499, they are partially based upon alleged harms caused by the day-to-day operations at the Rail Facility, a remedy of which would burden the railroad.  (<u>See</u> Doc. No. 1 ¶¶ 26–30.)  This burden triggers the second prong for preemption under the Third Circuit's test in <u>Jackson</u>.  <u>See Diehl</u>, 349 F. Supp. at 500. Due to these allegations, Plaintiff's state law claims partially "involve the operation and construction of rail carrier tracks and facilities, such that they fall within the exclusive jurisdiction of the STB."  <u>Id.</u>  In this regard, preemption by the ICCTA is "manifest on the face of the Complaint."  <u>See Lupian</u>, 905 F.3d at 127.

The Court, however, will not hold that the ICCTA wholly forecloses Counts II through V because the claims are also based upon the allegations that Defendants wrongfully removed a line

of trees, many of which were located on Plaintiff's property.  (See Doc. No. 5 at 7–9.)  On this point, Defendants have failed to demonstrate preemption because they have not explained how the operations of the Rail Facility would be burdened by claims of "unlawful, physical intrusions on neighboring lands" and the removal of trees located on the Property and at the edge of the Rail Facility.  (Id. at 9.)  Moreover, Defendants have failed to show that removal of this forestation was so integral to its operations as to be preempted under the ICCTA, such that a claim on this basis would "prevent[] the railroad from carrying out its business in a sensible fashion."  See Jackson, 500 F.3d at 252.

Therefore, the ICCTA will only preempt Counts II through V to the extent that they are based upon damages from day-to-day operations at the Rail Facility, including "loud noises, fumes, pollution, and debris" from the Rail Facility.  (Doc. No. 1 ¶¶ 26–30.)  Allegations regarding damages from the removal of the trees do not warrant preemption at this stage because Defendants have failed to demonstrate how the railroad's operations would be burdened under the Third Circuit's test in Jackson.[4]

**B. The Court will not dismiss Counts II through V.**

Because Defendants' Motion to Dismiss was based upon the affirmative defense of preemption, the Motion itself does not challenge the allegations in Counts II through V on substantive grounds.  (See Doc. No. 3.)  However, on November 16, 2021, at the hearing held with

---

[4]  As noted above, Defendants do not move to dismiss Count VI, Plaintiff's state law claim of conversion, on the basis of preemption by the ICCTA.  (Doc. No. 3-2 at 13.)  At the hearing held on November 16, 2021, Defendants noted that they take this stance because Count VI alleges "conversion of Plaintiff's trees" and is not based at all on allegations of noise, fumes, debris, or pollution from the Rail Facility.  (See Doc. No. 1 ¶ 82.)  In Count VI, Plaintiff seeks damages in the amount of "the estimated cost of replacing the mature tree line."  (Id. ¶ 83.)  Such damages are not foreclosed by the Court's decision above regarding preemption, and therefore Count VI will remain in this case.

the counsel for the parties, the Court discussed with the parties whether Counts II through V should be dismissed on substantive grounds.  The Court already has determined, <u>supra</u>, that Counts II through V are preempted by the ICCTA to the extent that they are based on allegations of "loud noises, fumes, pollution, and debris" from the Rail Facility.  Thus, the Court will now assess whether the other factual allegations in the Complaint are sufficient to survive dismissal of Counts II through V for failure to state a claim.  Drawing from the statements of counsel on the record and upon review of the allegations in the Complaint, the Court will deny Defendants' Motion to Dismiss Counts II, III, IV, and V.

**1. The Court will deny Defendants' Motion to Dismiss Count II, Trespass**

Count II of the Complaint asserts trespass.  At the hearing held on November 16, 2021, Defendants argued that they were not moving to dismiss Plaintiff's claim that Defendants came to her Property and cut down trees, but that any allegations of increased noise or fumes from the Rail Facility due to the loss of trees are not proper damages for a trespass claim.  In response, Plaintiff asserts that the claim of trespass in the Complaint is, instead, premised on the allegation that Defendants entered the Property without permission and cut down trees, rather than based upon any noise or fumes from the Rail Facility.  (<u>See</u> Doc. No. 5 at 7.)

"A trespass is committed when one intentionally enters land in the possession of another, or causes a thing to do so." <u>Bruni v. Exxon Corp.</u>, 52 Pa. D. & C.4th 484, 503 (Com. Pl. 2001) (citing <u>Jones v. Wagner</u>, 624 A.2d 166 (Pa. Super. 1993).  "Intent" in this context means either that the "actor" desires to cause the consequences of his act, or he believes those consequences are substantially certain to result from it.  <u>United Services Auto Ass'n v. Elitzky</u>, 517 A.2d 982, 989 (Pa. Super. 1986).  "[A] person is a trespasser merely by intending to be where he is.  The intent

to be on another's land is not required to prove trespass." <u>Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Prac. Knowledge</u>, 102 A.3d 501, 507 (Pa. Super. 2014).

In Count II, Plaintiff's Complaint alleges the following: that the Property belongs to Plaintiff, that Defendants had no legal authority or permission to enter the property, that Defendants trespassed by intentionally entering or directing its agents to enter the Property, that Defendants cut down trees on the Property, that cutting down the trees "wrongfully interfered with and/or otherwise disturbed the rightful possession, use, and enjoyment of the Property by Plaintiff," and that Defendants' conduct "was the sole factor in causing injury to the wood, underwood, and trees on the Property." (Doc. No. 1 ¶¶ 50–58.) Furthermore, Plaintiff seeks damages to replace the trees and restore the Property to its original condition. (<u>Id.</u> ¶ 59.)

These claims allege facts to establish trespass by asserting the intentional entry of Defendants onto the Property owned by Plaintiff without permission. Construing the facts in the Complaint as true, such allegations are sufficient to support a trespass claim under Pennsylvania law. Contrary to Defendants' argument, Count II does not entirely base its trespass claim upon the "entry" of noise or fumes onto the Property, and it therefore will survive dismissal. Nevertheless, Plaintiff is reminded that damages for trespass may not include those that are preempted by the ICCTA, including those for the "unfettered loud noises, fumes, pollution, and debris coming from" Defendants' Rail Facility, the visibility of "equipment, trash, and debris at the Rail Facility," or "the trash and debris from the Rail Facility" that has "found its way" to the Property through the chain link fence. (<u>Id.</u> ¶¶ 26–27.) Because the Complaint has pled facts sufficient to state a claim for trespass, the Court will deny Defendants' Motion to Dismiss Count II for failure to state a claim.

### 2. The Court will deny Defendants' Motion to Dismiss Count III, Private Nuisance

Count III of the Complaint asserts a claim of private nuisance.  Pennsylvania follows the definition of private nuisance provided in the Restatement (Second) of Torts.  See Karpiak v. Russo, 676 A.2d 270, 272 (Pa. Super. 1996).  According to the Restatement:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 822 (Am. Law. Inst. 1979).  When analyzing a private nuisance claim under the Restatement, "the key question is whether one person has impaired another person's private right of use or enjoyment of their land."  Diehl, 349 F. Supp. 3d at 508 (citing Diess v. Pa. Dep't of Transp., 935 A.2d 895, 905 (Pa. Commw. 2007)).

In Pennsylvania, liability for private nuisance requires that the defendant's alleged invasion of another's interest in the private use and enjoyment of land caused "significant harm."  Karpiak v. Russo, 676 A.2d 270, 272 (Pa. Super. 1996).  A "significant harm" for purposes of a private nuisance must involve more than "slight inconvenience or petty annoyance," and it must constitute a "real and appreciable interference with the plaintiff's use or enjoyment of his land."  Id. (citing Restatement (Second) of Torts § 821F.  In any event, "[i]t is for the trier of fact to determine whether there was a significant invasion of [a party's] enjoyment of [her] property, and, if such an invasion existed, whether the invasion was unreasonable."  Tiongco v. Sw. Energy Prod. Co., 214 F. Supp. 3d 279, 285 (M.D. Pa. 2016) (citing Kembel v. Schlegel, 478 A.2d 11, 15 (Pa. Super. 1984)).

In Count III, Plaintiff alleges that Defendants caused or otherwise directed the "destruction of wood, underwood, and trees on the Property," that such conduct was intentional and

unreasonable, and that these actions constituted a substantial interference with her use and enjoyment of the Property.  (Doc. No. 1 ¶¶ 61–63.)  Construing these facts as true, and disregarding allegations of the "noises, fumes, pollution, and debris" from the Rail Facility as preempted, Plaintiff still has met her burden of establishing a private nuisance claim under Pennsylvania law. Namely, Plaintiff has alleged facts to support that, due to the loss of trees on the edge of her 2.7-acre Property, she suffered an invasion in the use and enjoyment of her Property.  (See id. ¶ 60–68.)

The discovery process will unveil the extent of harm that "destruction of wood, underwood, and trees on the Property" had upon Plaintiff's use and enjoyment of the Property.  (Id. ¶¶ 61–63.) And, ultimately, the question of whether Defendants' actions caused "significant harm" may be for a jury to decide.  See Tiongco, 214 F. Supp. 3d at 285.  Thus, the facts in the Complaint alleging the removal of a line of trees on Plaintiff's Property are sufficient to support a claim for private nuisance under Pennsylvania law.  Plaintiff is reminded, however, that damages for her nuisance claim may not include those that are preempted by the ICCTA, as discussed supra.  Because Plaintiff otherwise has alleged facts to support her claim for private nuisance, the Court will deny Defendants' Motion to Dismiss Count III.

### 3. The court will deny Defendants' Motion to Dismiss Count IV, Declaratory Judgment.

In Count IV, Plaintiff asserts a claim to relief under the federal Declaratory Judgment Act.[5] The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking

---

[5]   The Complaint does not specify whether Plaintiff brings her claim for a declaratory judgment under the federal Declaratory Judgment Act ("DJA").  Nevertheless, because Plaintiff's Complaint was filed in this Court, the federal DJA applies to her claims.

such declaration, whether further relief is or could be sought."   28 U.S.C. § 2201(a).  The Third Circuit has set forth the following factors to consider when considering a claim under the Declaratory Judgment Act: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."  Founders Ins. Co. v. Bustleton Spirits, Inc., Civ. No. 12-1303, 2012 WL 13015113, at *2 (E.D. Pa. June 26, 2012) (citing Terra Nova Ins. Co. v. 900 Bar. Inc., 887 F.2d 1213, 1224 (3d Cir. 1989)) (internal quotation marks omitted).

"Where there is 'some overlap' between plaintiffs' declaratory judgment claim and other substantive claims, courts may refuse to dismiss the declaratory judgment claim if the plaintiffs' 'remaining claims have not been fully developed . . . [and] the Court cannot fully evaluate the extent of the overlap to determine whether declaratory judgment would serve [any] useful purpose in clarifying the legal rights and relationships at issue.'"  Baker v. Deutschland GmbH, 240 F. Supp. 3d 341, 350 (M.D. Pa. 2016) (citing Fleisher v. Fiber Composites, LLC, 2012 WL 5381381, at *12–13 (E.D. Pa. Nov. 2, 2012)).

Here, Plaintiff seeks a declaration that "Defendant[s] unlawfully trespassed upon the Property and/or otherwise wrongfully interfered with Plaintiff's rightful possession, use, and enjoyment of the Property," that "Defendant[s] unlawfully cut down and removed Plaintiff's trees from the Property, and that Defendant[s] [are] responsible for the costs and damages incurred by Plaintiff. (Doc. No. 1 ¶ 70.) This declaration overlaps with the claims that remain in the Complaint after the preemptive matters are deleted.  Whether the Court should issue such a declaration will depend on the outcome of Plaintiff's remaining claims in Counts I, II, V, and VI. At the motion to dismiss stage, these outstanding claims have not been fully developed.  Thus, dismissal of Count

IV under the DJA would be premature.  After Plaintiff has developed her claims on the remaining counts, the Court will then consider the factors outlined by the Third Circuit to determine whether declaratory judgment is an appropriate remedy.  For these reasons, the Court will not dismiss Plaintiff's declaratory judgment claim under the Federal Declaratory Judgment Act.

### 4. The Court will deny Defendants' Motion to Dismiss Count V, Negligence

Count V asserts a claim of negligence.  To make out a claim of negligence under Pennsylvania law, a plaintiff must assert the following elements: (1) a duty to conform to a certain standard for the protection of others against unreasonable risks; (2) the defendant's failure to conform to that standard, or a breach of its duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff.  Jones v. Plumer, 226 A.3d 1037, 1039 (Pa. Super. 2020) (quoting Brewington for Brewington v. City of Philadelphia, 199 A.3d 348, 355 (Pa. 2018)).

In the Complaint, Plaintiff alleges facts to support each element of negligence.  Plaintiff asserts, inter alia, that Defendants were negligent in failing to train or supervise the employees who wrongfully entered the Property and cut down the trees.  For duty, Plaintiff alleges that "Defendant[s] had a duty not to interfere with Plaintiff's possession, use, and enjoyment of the Property."  (Doc. No. 1 ¶ 73.)  Next, Plaintiff asserts that Defendants breached this duty by, inter alia, encroaching and/or invading the Property, cutting down and removing trees, failing to train or supervise employees who committed these acts, and failing to protect Plaintiff's Property from unreasonable risk of damage.  (Id. ¶ 74.)  Also, Plaintiff alleges that Defendants' actions were the but-for and proximate cause of damage to the Property, including diminution in property value. (Id. ¶¶ 75–79.)

At the hearing held on November 16, 2021, Defendants argued that Plaintiff's request for punitive damages, which requires willful intent as the Court will discuss <u>infra</u>, undercuts Plaintiff's negligence claim.  This is not so.  Because the mind of the actor is vital to this issue, "the clear trend in this Circuit is to permit adequately pled claims of punitive damages based on negligence to proceed to discovery."  <u>Young v. Westfall</u>, Civ. No. 406-2325, 2007 WL 675182, at *2 (M.D. Pa. Mar. 1, 2007).  Therefore, Plaintiff in her Complaint may bring claims for both negligence and punitive damages, and "[a]lthough the facts may later prove at most that [D]efendants were merely negligent, discovery is necessary to help make this determination [of whether punitive damages are appropriate].  <u>Id.</u>  Thus, bringing claims for negligence and punitive damages at the same time is not fatal to either claim at the motion to dismiss stage.

Because Plaintiff has sufficiently stated facts to support a claim of negligence, the Court will deny Defendants' Motion to Dismiss Count V.

### 5. Plaintiff has sufficiently alleged in the Complaint a claim for Punitive Damages.

Defendants also move to dismiss Plaintiff's claim for punitive damages.  Punitive damages are appropriate "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct."  <u>Hutchison ex rel. Hutchison v. Luddy</u>, 870 A.2d 766, 770 (Pa. 2005).  "[I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk."  <u>Id.</u> at 772.  For punitive damages, "[t]he state of mind of the actor is vital." <u>Id.</u> at 770–71.

Here, viewing the allegations in the Complaint in the light most favorable to Plaintiff, the Complaint alleges that Defendants, without permission or notice, entered the Property and cut

down trees on the Property.  (Doc. No. 1 ¶ 21, 23.)  These allegations, if proven, may support a claim for punitive damages. Although discovery may reveal that punitive damages are not appropriate, dismissal of the punitive damages claim at the pleadings stage would be premature. See King v. Hyundai Motor Mfg. Am., Civ. No. 18-450, 2019 WL 458477, at *3 (M.D. Pa. Jan. 3, 2019), report and recommendation adopted, Civ. No. 18-450, 2019 WL 450217 (M.D. Pa. Feb. 5, 2019).  Therefore, the Court also will deny Defendants' Motion to Dismiss Plaintiff's request for punitive damages.

### D. The Court will deny Defendants' Motion for a More Definite Statement

Finally, the Court will deny Defendants' Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).  As noted above, a motion for a more definite statement may only be granted if a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).

Of the remaining claims in Counts I, II, IV, V, and VI, none are so "vague" or "unintelligibl[e]" to warrant a more definite statement.  "Defendants can sufficiently understand, respond, and seek discovery based on the facts alleged." Callan v. Ocean Cnty. Dep't of Corr., Civ. No. 21-08450, 2022 WL 901528, at *9 (D.N.J. Mar. 28, 2022).  Further, to the extent that Defendants ask for a more definite statement to determine the issue of preemption, this is not warranted.  The Court has, supra, already determined the extent to which Plaintiff's claims in Counts II through V are preempted under the ICCTA.  And in any event, preemption is an affirmative defense that Defendants have the burden of proving.  Therefore, the Court will deny Defendants' Motion for a More Definite Statement.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss (Doc. No. 3).  An appropriate Order follows.